## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

ISAAC INDUSTRIES, INC.,

        Plaintiff,

     v.

U.S. CUSTOMS AND BORDER
PROTECTION,

        Defendant.

_____

Civil Action No. 05-1415 (PLF)

### MOTION FOR SUMMARY JUDGMENT

The defendant, pursuant to Rule 56 of the Federal Rules of Civil Procedure, moves for summary judgment on the grounds that there are no material disputes of fact and the defendant is entitled to judgment as a matter of law.

In support of this motion, the defendant submits the declaration of John E. Elkins, Chief of FOIA Appeals, Policy and Litigation Branch (FABLB), U.S. Customs and Border Protection (CBP); Marshall Fields, Chief FOIA/PA Section, Information Disclosure Unit, U.S. Immigrations and Customs (ICE), Mark Ferguson, Regulatory Audit Division, CBP; Christina Brooks, Acting Chief, Houston Drawback Center, CBP; and a Memorandum of Points and Authorities.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

_____
R. CRAIG LAWRENCE, D.C. Bar #171538
Assistant United States Attorney

_____
DIANE M. SULLIVAN, D.C. Bar #12765
Assistant United States Attorney
555 4TH St., N.W.,
Civil Division
Washington, D.C.   20530
(202) 514-7205

Of Counsel:
Diane M. Galiano
Office of Associate Chief Counsel
U.S. Customs and Border Protection

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                )
ISAAC INDUSTRIES, INC.,         )
                                )
                Plaintiff,      )
                                )
        v.                      )       Civil Action No. 05-1415 (PLF)
                                )
U.S. CUSTOMS AND BORDER         )
PROTECTION,                     )
                                )
                Defendant.      )
                                )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Introduction**

Plaintiff, Isaac Industries, Inc., is a chemical export
wholesaler who brought this action under the Freedom of
Information Act (FOIA), 5 U.S.C. § 552 et seq. against U.S.
Customs and Border Protection (CBP), Department of Homeland
Security (Complaint ¶ 1, 3).

**Factual Background**

On March 16, 2005, plaintiff sent a FOIA request to the
CBP's Fines, Penalties and Forfeitures Branch at Port of Houston,
Texas seeking "proof" and documents relating to Customs Case No.
2002-5301-3002920 (Complaint ¶ 12; Elkins Declaration ¶ 7,
Exhibit A). On April 15, 2005, CBP's Port of Houston's Director
initially denied plaintiff's FOIA request asserting that the
records requested were exempt from disclosure pursuant to
Exemption (b)(7)(A) and 19 U.S.C. 1593a(a) because a penalty
proceeding was still ongoing (Elkins Declaration ¶ 9, Exhibit B).

On August 17, 2005, the Chief of FOIA Appeals, Policy and Litigation Branch (FABLB), Office of Regulations and Rulings (ORR), Ms. Joanne Stump, addressed plaintiff's FOIA appeal (Elkin's Declaration ¶ 15, Exhibit G). She advised plaintiff that several items plaintiff requested and referred to as "proof" were not subject to FOIA. <u>Id</u>.[1] Ms. Stump reversed the decision of the CBP Area Port Director of Houston dated April 15, 2005 and released in full a copy of the eight page penalty decision letter issued by the Penalties Branch (<u>Id</u>., Exhibit G). In addition, CBP released a seven page copy of a laboratory report with redactions pursuant to Exemptions (b)(2), (b)(4), (b)(6), and (b)(7)(C) (<u>Id</u>.; <u>see also Vaughn</u> Index, Attachment A).

Finally, Ms. Stump forwarded plaintiff's FOIA request to other offices in CBP and to U.S. Immigrations and Customs Enforcement (ICE) which might have documents responsive to plaintiff's request. <u>Id</u>. Specifically, plaintiff's FOIA request was forwarded to CBP's Drawback Field Office in Houston, Texas, CBP's Regulatory Audit Division, South Florida Field Office, ICE's Field Office in Miami, Florida and to ICE's Field Office in Houston, Texas (Field Declaration ¶ 15).

---

[1] Agencies are not required to answer questions posed as FOIA requests. <u>Zemansky v. EPA</u>, 761 F.2d 569, 574 (9th Cir. 1985); <u>DiViao v. Kelly</u>, 571 F.2d 538, 542-543 (10th Cir. 1978); <u>see also</u>, <u>Flowers v. IRS</u>, 307 F. Supp. 2d 60, 71 (D.D.C. 2004)(cannot use FOIA to conduct an inquiry into the agency's rational for auditing plaintiff).

CBP's Regulatory Audit Division in the South Florida Field Office was searched for responsive documents (Ferguson Declaration ¶¶ 2, 4-8). The search consisted of searching its automated Regulatory Audit Management System (RAMIS), the Regulatory Audit Archive System (RAAS) and the file room for hard copies of responsive documents (Ferguson Declaration ¶¶ 4-7). The only document located was the Audit Technical Assist Report, number 411-00-ATO-17359 dated November 11, 2005 (Ferguson Declaration ¶¶ 6-7). The Regulatory Audit Division, CBP, Miami, Florida was unable to locate any audit work papers (Elkins Declaration ¶ 20).[2] The Audit Technical Assist Report consisted of four pages, a three page report and a one page distribution sheet. Id. Two pages were released in full and two pages were partially redacted pursuant to Exemptions (b)(6) and (b)(7)(c). Id.

CBP's Houston Drawback Office searched its files and located 896 pages that were provided in duplicate form to the Houston Processor on December 9, 2002 in response to plaintiff's 2002 FOIA request (Brooks Declaration ¶ 4). In response to plaintiff's 2005 FOIA request, which is the subject of this

---

[2] In June 2004, the Regulatory Audit Division moved from Miami, Florida to Plantation Florida (Ferguson Declaration ¶¶ 8). In preparation of this move, all closed files dating back five years were destroyed. Id. The Regulatory Audit Division concluded after an exhaustive search that the audit papers were inadvertently destroyed in this process (Ferguson Declaration ¶¶ 9).

litigation, CBP's Drawback Center conducted an additional search (Brooks Declaration ¶¶ 7-8).  This search revealed that all responsive non-exempt documents had already been disclosed to plaintiff in response to plaintiff's 2002 FOIA request (Id.; Elkins Declaration ¶ 21).  The documents were released to plaintiff on December 18, 2002 in response to that 2002 FOIA request (Elkins  Declaration ¶ 19).

The CBP's Houston Processor in the Fines, Penalties and Forfeitures Branch found only two documents in her possession which were responsive to plaintiff's FOIA request and had not been previously released (Elkins Declaration ¶ 19).  The documents were the eight page Penalty Decision and the seven page CBP laboratory report (Elkins Declaration ¶ 20, Exhibit H).  Id. The documents were initially withheld, but as noted above, on appeal the Penalty Decision was release in full and the laboratory report was released with redactions.

ICE's Miami Field Office conducted a search of the Investigations Record Systems (IRS) and the Treasury Enforcement Communication System (TECS) (Fields Declaration ¶ 9).  The ICE agent for the Isaac case was contacted and reviewed the actual case file.  Id.  ICE Miami determined that there were 26 pages of records responsive to plaintiff's referred FOIA request (Id. at ¶ 10).  Five pages were withheld in full and twenty-one pages were

released with redactions pursuant to Exemptions (b)(2), (b)(6) and (b)(7)(6) (<u>Id</u>. ¶ 11).[3]

ICE's Houston Field Office also received a referral copy of plaintiff's 2005 FOIA request (<u>Id</u>. ¶ 12). Similarly, ICE Houston conducted a search of the TEAS and IRS Systems to determine if any responsive documents existed in Houston (<u>Id</u>. ¶ 14). The case agent was contacted and the document files located. A search disclosed that there were seventeen ROIs, consisting of forty-four pages (<u>Id</u>. ¶ 15). A review of the files determined that of the forty-four documents, only twenty-seven were responsive to plaintiff' s FOIA request (<u>Id</u>. ¶ 16).

On October 21, 2005, ICE's Houston Field Office, responded to plaintiff's FOIA request and released twenty-seven pages with redactions pursuant to Exemption (b)(2), (b)(7)(C) and (b)(7)(E) (<u>Id</u>., Exhibit XX).

In addition, by letter dated October 28, 2005, ICE Headquarters released eighty-six pages of records to plaintiff with redactions pursuant to Exemptions (b)(2), (b)(6), (b)(7)(c) and (b)(7)(E). These additional pages are maintained in ICE's Miami Office and were initially thought to be unresponsive to plaintiff's FOIA request. However, on further review, these

---

[3] Of the twenty-six pages, five pages were a Report of Investigation (ROI) dated December 20, 1999, six pages were a ROI dated October 18, 2000, five pages were a ROI December 15, 2000, one page was an Organizational Subject Record, three pages were email messages and six pages were a copy of an import/export spreadsheet (Fields Declaration ¶ 11, Exhibit XX).

documents were considered responsive and processed as noted above (Fields Declaration ¶ 18, Exhibit XX).

In sum, the CBP properly invoked Exemptions (b)(2) to protect matters related solely to internal personnel rules and practices; Exemption (b)(4) to protect confidential commercial information voluntarily provided to CBP in the course of an investigation; Exemption (b)(6) to protect individuals whose name appears on documents; and Exemption (b)(7)(v) to protect information compiled for law enforcement purposes the disclose of which could reasonably be expected to constitute an unwarranted invasion of privacy.

Similarly, ICE properly invoked Exemption (b)(2) to protect certain codes appearing on printouts and internal instructions; Exemption (b)(4) to protect the drawback information provided by shippers other than plaintiff; Exemption (b)(5) to protect intra-agency pre-decisional recommendations; Exemption (b)(6) to protect the names of non-law enforcement personnel that appear on the records; Exemption (b)(7)(C) to protect the identity of the agency employees and third parties; and Exemption (b)(7)(E) to protect the details of law enforcement techniques and procedures (surveillance, undercover personnel and informants).

**Argument**

I.    **Standard of Review**

A.    **Standard for Summary Judgment**

Where no genuine issue of material fact exists, summary judgment is required.  Fed. R. Civ. P. 56(c), <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).  A genuine issue of material fact is one that would change the outcome of the litigation.  <u>Id</u>. at 247.  "The burden on the moving party may be discharged by 'showing' – that is, pointing out to the [Court] – that there is an absence of evidence to support the non-moving party's case."  <u>Sweats Fashion, Inc. v. Panel Knitting Co.</u>, 833 F.2d 1560, 1563 (Fed. Cir. 1987) (quoting <u>Chelates Corp. v. Citrate</u>, 477 U.S. 317, 325 (1986)(emphasis in original)).

In <u>Anderson</u>, the Supreme Court adopted a threshold by which to determine whether summary judgment is appropriate:

> If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted . . . . [T]he mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff.

477 U.S. at 252.  <u>See also</u> <u>Laningham v. U.S. Navy</u>, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor).  In <u>Chelates</u>, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral

7

part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The summary judgment standards expounded above also apply to FOIA cases, which are typically resolved through motions of summary judgment.[4] See Cooper Cameron Corp. v. U.S. Dep't of Labor, 280 F.3d 539, 543 (5th Cir. 2002). In a FOIA suit, summary judgment is appropriate when an agency demonstrates that no material facts are in dispute and that each document requested either has been produced, not withheld, is unidentifiable, or is exempt from disclosure. Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg. v. U.S. Dep't of Justice, 627 F.2d 365, 368 (D.C. Cir. 180).

An agency may satisfy the requirements of summary judgment in a FOIA case by proffering to the Court and Plaintiff affidavits or declarations and other evidence which show that the documents are exempt from disclosure. Hayden, 608 F.2d at 1384-86; Church of Scientology of California v. U.S. Dep't of Army, 611 F.2d 738, 742 (9th Cir. 1980). Summary judgment may be awarded to an agency in a FOIA case solely on the basis of information provided in affidavits or declarations when the

---

[4] For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to de novo review by the courts. Hayden v. National Sec. Agency Cent. Sec. Serv., 608 F.2d 1381, 1384 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980).

affidavits or declarations describe "the documents and the justifications for non-disclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." <u>Military Audit Project v. Casey</u>, 656 F.2d 724, 738 (D.C. Cir. 1981). <u>See also</u> <u>Weisberg</u>, 745 F.2d at 1485; <u>Public Citizen, Inc. v. Dep't of State</u>, 100 F. Supp. 2d 10, 16 (D.D.C. 2000)(quoting <u>McGhee v. CIA</u>, 697 F.2d 1095, 1102 (D.C. Cir. 1983); <u>Bowen v. U.S. FDA</u>, 925 F.2d 1224, 1227 (9th Cir. 1991).

Once the moving party has met its burden that there is an absence of evidence to support the non-moving party's case, the burden shifts and the non-movant may not rest on mere allegations, but must proffer specific facts showing that a genuine issue of material fact exists for trial. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). Therefore, to avoid summary judgment, Plaintiff must present some objective evidence that would enable the court to find that he is entitled to relief. In <u>Chelates</u>, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute of material fact. 477 U.S. at 322-23.

**B.    <u>Defendant Has Submitted Proper "Vaughn" Indices</u>**

The declarations and/or affidavits (singly or collectively) submitted in support of motions for summary judgment are generally referred to as a <u>Vaughn</u> index.[5]  <u>Vaughn v. Rosen</u>, 484 F.2d 820, 827-28 (D.C. Cir 1973), cert. denied, 415 U.S. 977 (1974).  There is no set formula for a <u>Vaughn</u> index.  After all, "it is well established that the critical elements of the <u>Vaughn</u> index lie in its function, and not in its form." <u>Kay v. FCC</u>, 976 F. Supp. 23, 35 (D.D.C. 1997).  The only requirement is that index gives the reviewing court a "reasonable basis to evaluate the claim of privilege." <u>Delaney, Midgail & Young, Chartered v. IRS</u>, 826 F.2d 124, 128 (D.C. Cir. 1987).  <u>See also</u> <u>Keys v. Dep't of Justice</u>, 830 F.2d. 337, 349 (D.C. Cir. 1987); <u>Hinton v. Dep't of Justice</u>, 844 F.2d 126, 129 (3d Cir. 1988).

In support of this motion for summary judgment CBP and ICE have provided detailed declarations and coded <u>Vaughn</u> indexes (<u>See</u> Elkin Declaration; Fields Declaration; Brooks Declaration and Ferguson Declaration).  The CBP's declaration was prepared by John Elkins, Chief of FOIA Appeals, Policy and Litigation Branch (Elkins Decl., at ¶ 1).  Mr. Elkin's official duties require him

---

[5]  "A Vaughn index must: (1) identify each document withheld; (2) state the statutory exemption claimed; and (3) explain how disclosure would damage the interests protectged by the claimed exemption." <u>Citizens Comm'n on Human Rights v. FDA</u>, 45 F.3d 1325, 1326 n.1 (9th Cir. 1995).  The explanations and descriptions of withheld material "need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA." <u>Founding Church of Scientology of Washington, D.C. v. Bell</u>, 603 F.2d 945, 949 (D.C. Cir. 1979).

to be familiar with the processing and release of information requested under the FOIA/PA (See Elkins Decl., at ¶ 1,2). Mr. Elkin's declaration explains the search undertaken by the CBP, the description of responsive material, the application of the exemptions, and the justifications for the exemptions on the withheld material. Mr. Elkin sets forth page-by-page where the CBP withheld information in its release to plaintiff and why the information was withheld. In addition, CBP has submitted the declarations of Mark W. Ferguson, an Auditor in the Regulatory Audit Division in Southern Florida and Christina M. Brooks, Acting Drawback Chief of the Houston Drawback Center, to further explain the adequacy of the search undertaken by CBP. Finally, the defendant has submitted the declaration of Marshal H. Fields, Chief of the FOIA/PA Section Information and Disclosure Unit, Office of Investigation for ICE. Mr. Fields' declaration explains the adequacy of the search undertaken by ICE, the description of the responsive material, the application of the exemptions and ICE's justifications for invoking the exemptions.

In short, the four declarations and the coded Vaughn indexes provide the Court with sufficient basis to permit "a reasoned judgment as to whether the material is actually exempt under FOIA." Founding Church of Scientology of Washington, D.C., 603 F.2d at 949.

**II.  The Defendant's Search Was Adequate**

11

In responding to a FOIA request, an agency is under a duty to conduct a reasonable search for responsive records. <u>See</u> <u>Oglesby v. U.S. Dep't of Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1990); <u>Judicial Watch, Inc. v. U.S. Dep't of Commerce</u>, 337 F. Supp. 2d 146, 158 (D.D.C. 2004); <u>Allen v. U.S. Secret Service</u>, 335 F. Supp. 2d 95, 97 (D.D.C. 2004); <u>Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health and Human Servs.</u>, 844 F. Supp. 770, 776 (D.D.C. 1993); <u>Weisberg v. U.S. Dep't of Justice</u>, 705 F.2d 1344, 1352 (D.C. Cir. 1983). The reasonableness standard focuses on the method of the search, not its results. Therefore, it follows that a search is not necessarily unreasonable because it fails to produce relevant material. <u>Cleary</u>, 705 F.2d at 777 n.4. An agency need not search every record system, but need only to search those systems in which it believes responsive records are likely to be located. <u>Oglesby</u>, 920 F.2d at 68.

The search standards under FOIA do not place upon the agency a requirement that it prove that all responsive documents have been located. <u>Nation Magazine, Washington Bureau v. U.S. Customs Serv.</u>, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995). It has been held that "'the search need only be reasonable; it does not have to be exhaustive.'" <u>Miller v. Dep't of State</u>, 779 F.2d 1378, 1383 (8th Cir. 1985) (citing <u>Nat'l Cable Television Ass'n v. FCC</u>, 479 F.2d 183, 186 (D.C. Cir. 1973)). Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as

the search was diligent.  <u>Nation Magazine</u>, 71 F.3d at 892 n.7.
Additionally, the mere fact that a document once existed does not
mean that it now exists; nor does the fact that an agency created
a document necessarily imply that the agency has retained it.
<u>Maynard v. CIA</u>, 986 F.2d 547, 564 (1st Cir. 1993).

   The burden rests with the agency to establish that it has
"made a good faith effort to conduct a search for the requested
records, using methods which can be reasonably expected to
produce the information requested."  <u>Oglesby</u>, 920 F.2d at 68.
"An agency may prove the reasonableness of its search through
affidavits of responsible agency officials so long as the
affidavits are relatively detailed, non-conclusory and submitted
in good faith."  <u>Miller v. U.S. Dep't of State</u>, 779 F.2d 1378,
1383 (8th Cir. 1985); <u>Goland v. CIA</u>, 607 F.2d 339, 352 (D.C. Cir.
1978), <u>cert</u>. <u>denied</u>, 445 U.S. 927 (1980).  Once the agency has
proffered such evidence, the burden then shifts to the requester
to rebut the evidence by a showing of bad faith on the part of
the agency.  <u>Miller</u>, 779 F.2d at 1383.  A requester may not rebut
agency affidavits with purely speculative allegations.  <u>See
Carney v. U.S. Dep't of Justice</u>, 19 F.3d 807, 813 (2d Cir. 1994);
<u>SafeCard Servs., Inc. v. SEC</u>, 926 F.2d 1197, 1200 (D.C. Cir.
1991); <u>Maynard</u>, 986 F.2d at 559-560.

   The fundamental question is not "whether there might exist
any other documents responsive to the request, but rather whether
the search for those documents was adequate."  <u>Steinberg v. U.S.</u>

Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994)(quoting
Weisberg, 745 F.2d at 1485.

     Here, the defendant has sustained its burden to demonstrate
that the search for documents responsive to plaintiff's FOIA
request was adequate, reasonable, and in good faith.  The
plaintiff's FOIA request was submitted to CBP's Penalties and
Forfeiture Branch at the Port of Houston (Elkins Declaration ¶ 8,
Exhibit A).  On appeal, CBP released in full a copy of the
Penalty Decision Letter and the seven page CBP laboratory report
with redactions (Elkins Declaration ¶ 15).  Not satisfied that
all responsive documents had been located since plaintiff's 2002
FOIA request, plaintiff's FOIA request was referred to CBP's
Drawback Field Office in Houston, Texas and CBP's Regulatory
Audit Division, South Florida Field Office.  In addition, CBP
referred plaintiff's FOIA request to ICE's Special Agent in
Charge (SAC) in Miami, Florida and to ICE's SAC in Houston, Texas
(Elkins Declaration ¶ 15; Fields Declaration ¶¶ 7, 13).

     The CBP Regulatory Audit Division was able to locate only
one responsive document- The Report of Technical Assistance
consisting of four pages.  The Regulatory Audit Division searched
the Regulatory Audit Management System (RAMIS), the Regulatory
Audit Archive System (RAAS) and the Division's file room for
documents.

     As noted above, summary judgment will not be defeated by an
unsuccessful search for the documents so long as the search was

diligent.  <u>Nation Magazine</u>, 71 F. 3d at 892; <u>Maynard v. CIA</u>, 986

F. 2d 547, 564 (1st Cir. 1993).  The declaration of Mark Ferguson

demonstrates that the search was diligent and reasonable.  It

even included a search of the file room and other surrounding

files in the event that documents had been misfiled (Ferguson

Declaration ¶ 7).  <u>See</u> <u>Goland v. CIA</u>, 607 F. 2d at 552.

A renewed search of the permanent hard copy files in the

Drawback Division in Houston Texas revealed no new responsive

documents since plaintiff's December 2002 FOIA request. (Brooks

Declaration ¶¶ 6-8).  All responsive documents have been

previously disclosed.  <u>Id</u>.

ICE searched its offices in Miami, Florida and in Houston,

Texas where responsive documents were most likely to be found.

The search consisted of the TEAS and IRS System of records

(Fields Declaration ¶¶ 10,15,21-24).  In both instances, the case

agents in Houston and Miami were contacted and located the

responsive case files (<u>Id</u>. ¶ 25).  Some of the responsive

documents were released in full and others redacted in part

pursuant to Exemptions (b)(2), (b)(4), (b)(6), (b)(7)(c) and

(b)(7)(E).  (Fields Declaration ¶¶ 12,17, 19, 20).

The defendant has sustained its burden that the search for

documents was reasonable, made in good faith and reasonably

calculated to produce the information requested.  <u>Oglesby</u>, 920 F.

2d at 68.  The plaintiff may not rebut the declarations submitted

by CBP and ICE with purely speculative allegations.  <u>See</u> <u>Carney</u>,
19 F.3d at 813.

   **III.  <u>The Defendant Properly Applied FOIA Exemption (b)(2)</u>**

   Pursuant to 5 U.S.C. § 552(b)(2) ("Exemption 2"), the
government is not required to disclose records "related solely to
the internal personnel rules and practices of an agency."  5
U.S.C. § 552(b)(2).  Exemption 2 applies primarily to two types
of materials: (1) internal agency matters so routine or trivial
that they could not be "subject to. . . a genuine and significant
public interest" and (2) internal agency matters of some public
interest "where disclosure may risk circumvention" of statutes or
agency regulations.  <u>U.S. Dep't of Air Force v. Rose</u>, 425 U.S.
352, 369-70 (1976); <u>Schiller v. NLRB</u>, 964 F.2d 1205, 1207 (D.C.
Cir. 1992); <u>Nat'l Treasury Employees Union v. U.S. Customs Serv.</u>,
802 F.2d 525, 528-530 (D.C. Cir. 1986); <u>Crooker v. ATF</u>, 670 F.2d
1051, 1073-74 (D.C. Cir. 1981); <u>Dorsett v. U.S. Dep't of
Treasury</u>, 307 F. Supp 2d. 28, 35-36 (D.D.C. 2004); <u>Edmonds v.
FBI</u>, 272 F. Supp. 2d 35, 50 (D.D.C. 2003).  Depending upon the
nature of the information, documents will fall within either the
"low (b)(2) category" or the "high (b)(2) category."

   "Low (b)(2)" information refers to internal procedures and
practices of an agency the disclosure of which would constitute
an administrative burden unjustified by any genuine and
significant public benefit.  <u>Martin v. Lauer</u>, 686 F.2d 24, 34
(D.C. Cir. 1982).  "Low (b)(2)" information can be protected only

16

if the information qualifies as a personnel rule or internal practice of an agency or is sufficiently related to such a rule or practice. See Schwaner v. Dep't of the Air Force, 898 F.2d 793, 795 (D.C. Cir. 1990). Thus, trivial administrative data, such as file numbers, mail routing stamps, initials, data processing notations, brief references to previous communications, and similar administrative markings are exempt from disclosure. See Coleman v. FBI, 13 F. Supp. 2d 75, 78-79 (D.D.C. 1998) (citing Lesar v. Dep't of Justice, 636 F.2d 472 (D.C. Cir. 1980)). The reason is that administrative agencies should not be burdened by responding to requests for trivial information unlikely to be the subject of public interest. Martin, 686 F.2d at 34.

"High (b)(2)" information refers to more substantive internal matters. See Schiller, 964 F.2d at 1207. Withholding is permitted in this category to the extent that disclosure would reveal techniques and procedures for law enforcement investigations or prosecutions would disclose guidelines for law enforcement investigations, or would risk circumvention of an agency statute or impede the effectiveness of an agency's law enforcement activities. See Id. See also Crooker, 670 F.2d 1051, 1053 (D.C. Cir. 1981)(en banc); Hardy v. ATF, 631 F.2d 653, 656 (9th Cir. 1980).

Deference has been accorded to law enforcement matters under Exemption 2. Courts, and in particular courts in this

17

jurisdiction, have interpreted this exemption to apply to a wide range of information, including guidelines for conducting investigations (see PHE, Inc. v. U.S. Dep't of Justice, 983 F.2d 248, 251 (D.C. Cir. 1993)); guidelines for conducting post-investigation litigation (see Schiller, 964 F.2d at 1207); a training manual with information pertaining to surveillance techniques (see Crooker, 670 F.2d at 1073); criteria for prison gang-member classification (see Jimenez v. FBI, 938 F. Supp. 21, 27 (D.D.C. 1996)); and DEA's drug violator codes (see Albuquerque Publ'g Co. v. U.S. Dep't of Justice, 726 F. Supp. 851, 854 (D.D.C. 1989).

CBP properly withheld administrative markings related to agency file control systems that are purely internal. Moreover, public access to the file and control systems is restricted from the public which has little or no interest in this information (Elkins Declaration ¶¶ 25-26). ICE properly redacted codes that appear on printouts from the TEAS system of records. These codes are used for indexing, storing, locating, and retrieving information within ICE. These codes have internal significance but bear no relation to the substantive content of the record (Field Declaration ¶ 26). Some of the codes have a dual purpose and indicate the various aspects of the enforcement case, such as the scope and size of the investigation, type of activity being investigated and location of the investigation (Id.). Disclosure of these codes could assist a third party in deciphering the

codes, which could impede an ongoing investigation or assist unauthorized individuals to gain access to the TEAS system jeopardizing the integrity of the system. Id.

ICE also properly withheld internal instructions relating to the distribution of information to specific agency employees (Id. at ¶ 27). Disclosure of this information would have a detrimental effect on the agency's operations since it would describe the progress and status of the case at a particular point in time. Moreover, the information is trivial and would not assist in the public understanding how the agency carries out its statutory responsibilities (Id.).

Thus, CBP and ICE properly invoked Exemption (b)(2).

IV.    **The Defendant Properly Invoked Exemption (b)(4).**

FOIA Exemption (b)(4), 5 U.S.C. § 552(b)(4) protects (1) trade secrets and (2) information that is (a) commercial or financial, and (b) obtained from a person, and (c) privileged or confidential." Gulf & W. Indus. v. United States, 615 F.2d 527, 529 (D.C. Cir. 1979). This exemption is intended to protect the interests of both the government and the submitters of information.

In National Parks & Conservation Ass'n v. Morton, 498 F.2d 765 (D.C. Cir. 1974), the Court of Appeals for the District of Columbia held that the test for confidentiality is an objective one. Commercial or financial information is confidential if its disclosure is likely (1) to impair the government's ability to

19

obtain necessary information in the future or (2) cause
substantial competitive harm to the submitter of the information.
Id. at 767; see also Critical Mass Energy Project v. NRC, 931
F.2d 939, 948 (D.C. Cir.), vacated and reh'g en banc granted, 942
F.2d 799 (D.C. Cir. 1991), grant of summary judgment to agency
aff'd en banc, 975 F.2d 871 (D.C. Cir. 1992) (upholding
acceptance of National Parks).

CBP properly withheld commercial information required to be
disclosed by shippers to verify claims that imported merchandise
is commercially interchangeable with other merchandise and thus
eligible for drawback status (Elkins Declaration ¶¶ 29-30; Fields
Declaration ¶ 28).  The information was required to be furnished
to the government and if disclosed could open the submitters to
competitive disadvantage (Id.).  Thus, CPB properly withheld this
information.

CBP also properly withheld information about the
identification of a producer of substituted merchandise (Elkins
Declaration ¶ 30-31).  Samples were voluntarily provided by this
supplier (a third party) to be compared with samples imported by
the plaintiff in order to verify statements made by plaintiff in
its drawback claim (Id. at 30).  The laboratory report contains
confidential commercial information regarding the samples that
were provided for comparisons.[3]  This information is not released

_____

[3] The identity of the producer was also withheld pursuant to
Exemption (b)(6) and (b)(7)(c) (Elkins Declaration, Vaughn Index,

to the public (Id. at ¶ 31).  Thus, information about the
producer's identity was properly withheld.

**V.    The Defendant Properly Invoked FOIA Exemption (B)(5)**

FOIA Exemption 5 protects "inter-agency or intra-agency
memorandums or letters which would not be available by law to a
party other than an agency in litigation with the agency."  5
U.S.C. § 552(b)(5).  The scope of Exemption 5 is quite broad,
incorporating virtually all civil discovery privileges, including
the deliberative process privilege, and attorney work product and
attorney client privileges.  United States v. Weber Aircraft
Corp., 466 U.S. 792, 800 (1994).

In this case, the ICE withheld information which constituted
intra-agency and pre-decisional communications (Fields
Declaration ¶ 29).  This deliberative process privilege is for
the purpose of protecting the "quality of agency decisions."
NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 151 (1975).  This
privilege protects documents that are both pre-decisional and
deliberative, including "recommendations, draft documents,
proposals, suggestions, and other subjective documents which
reflect the personal opinions of the writer rather than the
policy of the agency."  Coastal States Gas Corp. v. Depot of
Energy, 617 F.2d 854, 866 (D.C. Cir. 1980).  Indeed, the mere
status of an agency decision within an agency decision making

---

Document # 003; Fields Declaration ¶ 31).

process may be protectible if the release of that information would have the effect of prematurely disclosing "the recommended outcome of the consultative process...as well as the source of any decision." Wolfe v. HAS, 839 F.2d 768, 775 (D.C. Cir. 1988) (en banc).

The policy underlying this privilege is to encourage open, frank discussions of policy matters between subordinates and supervisors, to protect against premature disclosure of proposed policies before they become final, and to protect against public confusion by disclosing reasons and rationales that were not in fact the ultimate grounds for the agency's action. See Mink v. EPA, 410 U.S. 73, 87 (1973) (privilege designed to promote "frank discussion of legal and policy matters") (quoting STREP. No. 813, 89th Cong., 1st Sess. 9 (1965); id. at 89); Russell v. Depot of the Air Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982); Coastal States Gas Corp. v. Depot of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980); Jordan v. United States Depot of Justice, 591 F.2d 753, 772-73 (D.C. Cir. 1978) (en banc), overruled in part on other grounds, Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051 (D.C. Cir.1981) (en banc).

The privilege protects not merely documents, but also the integrity of the deliberative process itself where the exposure of that process would result in harm. Dudman Communications Corp. v. Dept. of the Air Force, 815 F.2d 1565, 1568 (D.C. Cir. 1987) ("Congress enacted Exemption 5 to protect the executive's

deliberative processes – not to protect specific materials.").
Greenberg v. Dept. of Treasury, 10 F. Supp. 2d 3, 16, n.19
(D.D.C. 1998); Marzen v. HAS, 825 F.2d 1148, 1155 (7th Cir. 1987)
("[E]xemption protects not only the opinions, comments and
recommendations in the draft, but also the process itself.");
Pies v. IRS, 668 F.2d 1350, 1353-54 (D.C. Cir. 1981).

Courts have recognized that agencies are entitled to
deference in regard to the way they characterize their
deliberative process. See generally Allen v. Wright, 468 U.S.
737 (1984); Women's Equity Action League v. Bell, 743 F.2d 42, 43
(D.C. Cir. 1984).

Two fundamental requirements must be met for the
deliberative process privilege to be invoked. Mapother v. Dept.
of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993). First, the
communication must be pre-decisional, i.e., "antecedent to the
adoption of an agency policy." Jordan, 591 F.2d at 774. Second,
the communication must be deliberative, i.e., "a direct part of
the deliberative process in that it makes recommendations or
expresses opinions on legal or policy matters." Vaughn v. Rosen,
523 F.2d at 1143-44. In deciding whether a document should be
protected by the privilege, courts look to whether the document
is "pre-decisional," whether it was generated before the adoption
of an agency policy, in this case the final manual, and whether
the document is "deliberative," whether it reflects the
give-and-take of the consultative process. Coastal States, 617

23

F.2d at 866-68.  The exemption thus covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.  <u>Id.</u>  Documents which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the views of the agency, suggesting an agency position that is as yet only a personal position.  <u>Id.</u>

As set forth in the Fields Declaration ¶ 29 and in <u>Vaughn</u> index, the information withheld consists of communication relating to recommendations as to how to proceed with an enforcement case against the plaintiff.  The release of information may cause a chilling effect on the file and open communication required in contemplation of law enforcement strategies (<u>Id</u>.).

**VI.   The Defendant Properly Invoked Exemption (b)(6).**

Exemption 6 permits the government to withhold all information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute an unwarranted invasion of personal privacy."  <u>See</u> 5 U.S.C. § 552(b)(6).  The threshold issue to be determined in the application of Exemption 6 was firmly established in <u>Dep't of State v. Washington Post Co.</u>, 456 U.S. 595 (1982).  The Supreme Court made clear that all information that "applies to a particular individual" meets the threshold requirement for protection under Exemption 6.  <u>Id</u>. at 602.  CBP and ICE have

withheld certain information on the grounds that the information, if disclosed, would constitute a clearly unwarranted invasion of personal privacy of employees and third parties (Elkins Declaration ¶ 32; Fields Declaration ¶ 30).  Here, the information at issue identifies the names of CBP employees and third parties.  Therefore, this information meets the threshold requirement for protection under Exemption 6. See Washington Post Co., 456 U.S. at 602.

"The next step under Exemption 6 involves identifying the relevant privacy interests in non-disclosure and the public interests in disclosure, and determining 'whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy.'" Reed v. NLRB, 927 F.2d 1249, 1251 (D.C. Cir. 1991) (quoting Nat'l Ass'n Retired Fed. Employees v. Horner, 879 F.2d 873, 875 (D.C. Cir. 1989), cert. denied, 494 U.S. 1078 (1990)). "'The phrase 'clearly unwarranted invasion of personal privacy' enunciates a policy that will involve a balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information.'" Dep't of Air Force v. Rose, 425 U.S. 352, 372 (1976).

In this case, no overriding public interest requires the disclosure of the names of, or identifying information about CBP employees and third parties (Id.).  Plaintiff did not (nor could it) demonstrate any public interest for this type of information

25

or explain how disclosure would shed light on the operations of the government.  Id.  The information is properly exempt under FOIA Exemption (b)(6).

### VII. **The Defendant Properly Invoked Exemption (b)(7).**

Exemption 7 of the FOIA protects from disclosure "records or information compiled for law enforcement purposes" under certain circumstances.  5 U.S.C. § 552(b)(7).  "[T]he term 'law enforcement purposes' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope."  Mittleman v. Office of Pers. Mgmt., 76 F.3d 1240, 1243 (D.C. Cir. 1996), cert. denied, 519 U.S. 1123 (1997).  When, however, a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies."  Keys, 830 F.2d at 340 (citing Pratt v. Webster, 673 F.2d 408, 418 (D.C. Cir. 1982)).  A criminal law enforcement agency must simply show that "the nexus between the agency's activity. . . and its law enforcement duties" is "based on information sufficient to support at least 'a colorable claim' of its rationality."  Keys, 830 F.2d at 340 (quoting Pratt, 673 F.2d at 421).  Both CBP and ICE are law enforcement agencies (Elkins Declaration ¶¶ 3, 30; Fields Declaration ¶ 5).

### (1)  **Exemption (b)(7)(C)**

The FOIA Exemption 7(C) applies to records or information compiled for law enforcement purposes to the extent release of the information could reasonably be expected to constitute an

26

unwarranted invasion of privacy.  5 U.S.C. § 552(b)(7)(C)

("Exemption 7(C)").  Exemption 7(C) protects the identities of

suspects and other persons of investigatory interest who are

identified in agency records in connection with law enforcement

investigations.  See Reporters Comm. for Freedom of the Press v.

U.S. Dep't of Justice, 816 F.2d 730, 740 (D.C. Cir. 1987),

modified on other grounds, 831 F.2d 1124 (D.C. Cir. 1987), rev'd

on other grounds, 489 U.S. 749 (1989); Computer Prof'ls for

Social Responsibility v. U.S. Secret Serv., 72 F.3d 897, 904

(D.C. Cir. 1996); accord Nat'l Archives and Records Admin. v.

Favish, 541 U.S. 157, 157-58 (2004).  An agency in a FOIA case

may categorically assert Exemption 7(C) to protect the identities

of witnesses or other persons mentioned in law enforcement files

in such a way as to associate them with criminal activity.  See

Reporters Comm. for Freedom of the Press, 489 U.S. at 780; Nation

Magazine, 71 F.3d at 893, 895-96 (D.C. Cir. 1995); SafeCard

Servs., 926 F.2d at 1206.

The names of law enforcement officers who work on criminal

investigations have also traditionally been protected against

release by Exemption 7(C).  Davis v. U.S. Dep't of Justice, 968

F.2d 1276, 1281 (D.C. Cir. 1992); Lesar v. U.S. Dep't of Justice,

636 F.2d at 487-88.  Similarly, individuals who provide

information to law enforcement authorities, like the law

enforcement personnel themselves, have protectable privacy

interests in their anonymity.  Computer Prof'ls for Social

27

Responsibility, 72 F.3d at 904; Farese v. U.S. Dep't of Justice, 683 F. Supp. 273, 275 (D.D.C. 1987). The fact that the requester might be able to ascertain the individuals' identities through other means, or that their identities have been disclosed elsewhere, does not diminish those individuals' privacy interests. Fitzgibbon v. CIA, 911 F.2d 755, 767-68 (D.C. Cir. 1990); Weisberg, 745 F.2d at 1491.

Once a privacy interest has been established, as here, it must be balanced against the public interest, if there is any, that would be served by the disclosure. Albuquerque Publ'g Co., 726 F. Supp. at 855. The public interest in disclosure is limited to the FOIA's "'core purpose' of shed[ding] light on an agency's performance of its statutory duties." Reporters Comm. for Freedom of the Press, 489 U.S. at 773. This standard is not easily satisfied when law enforcement information pertaining to individuals is sought, for there "is no reasonably conceivable way in which the release of one individual's name. . . would allow citizens to know 'what their government is up to.'" Fitzgibbon, 911 F.2d at 768. See also Albuquerque Publ'g Co., 726 F. Supp. at 855-56 (no public interest in disclosure of sensitive information the DEA obtained about individuals and their activities, where such material would not shed light on the DEA's conduct with respect to the investigation). In order to overcome legitimate privacy interests, the requester must demonstrate not only the existence of a public interest, but also

that the public interest is both significant and compelling. Senate of Puerto Rico v. U.S. Dep't of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987); Stone v. FBI, 727 F. Supp. 662, 667-68 (D.D.C. 1990).

CBP and ICE properly applied Exemption 7(C) to withhold names and other identifying information of third parties and law enforcement personnel that would reveal the identity of and disclose personal information about individuals who were identified in the documents (Elkins Declaration ¶¶ 36-37; Fields Declaration ¶¶ 31-32). In making this determination, the individuals' privacy interests were balanced against any discernible public interest in disclosure of the individuals' identities. Id. The plaintiff, however, provided no facts to show any public interest, or potential public interest, that would outweigh the privacy interests of the individuals (Id., at ¶ 42). Thus, disclosure of the identities would be an unwarranted invasion of their personal privacy.  Id.

**VIII.    The Defendant properly invoked Exemption (b)(7)(E)**

Exemption (b)(7)(E) exempts from disclosure records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if

such disclosures could reasonably be expected to risk

circumvention of the law." 5 U.S.C. § (b)(7)(E).

This provision shields from disclosure information that

would reveal "techniques and procedures for law enforcement

investigations or prosecutions..." See 5 U.S.C. § 552(b)(7)(E).

In order to be protected under this section, the law enforcement

technique contained in the contested records must not be

generally known to the public.  Windels, Marx, Davies & Ives v.

Department of Commerce, 576 F. Supp. 405, 413-14 (D.D.C. 1983).

The degree of risk posed by the release of the information is not

relevant in the Court's determination.  Id.

ICE properly withheld information concerning its law

enforcement techniques which were employed in ICE's investigation

into the allegations of fraudulent drawback claims.  Disclosure

of this information would severely undermine the utility of the

techniques employed (Fields Declaration ¶ 33).

**IX.  Segregability Analysis**

The FOIA requires that if a record contains information that

is exempt from disclosure, any "reasonably segregable" information

must be disclosed after deletion of the exempt information unless

the non-exempt portions are "inextricably intertwined with exempt

portions." 5 U.S.C. § 552(b); Mead Data Cent., Inc. v. U.S. Dept.

of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).  The District

of Columbia Circuit has held that a district court considering a

FOIA action has "an affirmative duty to consider the segregability

30

issue <u>sua</u> <u>sponte</u>." <u>Trans-Pacific Policing Agreement v. U.S. Customs Service</u>, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

Here, both CBP and ICE have met their segregability obligations.  CBP and ICE reviewed the documents page by page, line by line for segregability and reported that all contents of the documents were being released with the exception of properly exempted material (Elkins Declaration ¶ 39; Fields Declaration ¶ 34).  In sum, the declarations from the CBP and ICE adequately demonstrate that all reasonably segregable, non-exempt information has been disclosed.

<b><u>CONCLUSION</u></b>

For the foregoing reasons, defendant's motion for summary judgment should be granted.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

_____
R. CRAIG LAWRENCE, D.C. Bar #171538
Assistant United States Attorney

_____
DIANE M. SULLIVAN, D.C. Bar #12765
Assistant United States Attorney
555 4TH St., N.W.,
Civil Division
Washington, D.C.  20530
(202) 514-7205

Of Counsel:
Diane M. Galiano
Office of Associate Chief Counsel
U.S. Customs and Border Protection

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                              )
ISAAC INDUSTRIES, INC.,       )
                              )
              Plaintiff,      )
                              )
      v.                      )    Civil Action No. 05-1415 (PLF)
                              )
U.S. CUSTOMS AND BORDER       )
PROTECTION,                   )
                              )
              Defendant.      )
                              )
_____)
```

**<u>STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE</u>**

The defendant, in accordance with Local Rule 7.1(h), submits the following Statement of Material Facts as to Which There Is No Genuine Issue:

1.  U.S. Customs and Border Protection (CBP) is the unified border agency within the Department of Homeland Security. Created by the Homeland Security Act of 2002, CBP combined the inspectional workforces and broad border authorities of Customs, U.S. Immigration and Naturalization Service, Animal and Plant Health Inspection Service and the entire U.S. Border Patrol.  <u>See</u> Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135.  CBP is a law enforcement agency with enforcement responsibilities over 400 statutes (Elkins Declaration ¶¶ 3, 30).

2.  U.S. Immigration and Customs Enforcement (ICE) is a law enforcement agency.  <u>See</u> 19 U.S.C. § 1589a; 8 U.S.C. § 1357; <u>See also</u> Transitional Authorities and Savings Provisions of the Homeland Security Act of 2002 (6 U.S.C. § 551, <u>et</u> <u>seq</u>.).

Subsequent to the Homeland Security Act of 2002 and the establishment and organization of Department of Homeland Security, the enforcement and investigation arms of Customs and the enforcement and investigative function of the U.S. Immigration and Naturalization Service and the Federal Protective Service, including special agents of those organizations, were combined into ICE (Elkins Decl. ¶ 4; Fields Declaration ¶ 5).

3.  The Policy and Litigation Branch (FAPLB) is the office within Customs and Border Protection (DHS/CBP) that is charged at all times pertinent to this litigation with the responsibility of managing and responding to administrative appeals of the Freedom of Information Act (FOIA), 5 U.S.C. § 552, responses of offices within CBP and ICE (Elkins Decl. ¶ 5).

4.  By a letter dated March 16, 2005, plaintiff submitted a FOIA request to the CBP's Fines, Penalties and Forfeitures ("FP&F") Officer at the Port of Houston, Texas, (Elkins Declaration ¶¶ 7-8; Exhibit A).[4]  The request asked for the following:

- Proof that there was an "undisclosed substitution of domestically produced polypropylene with the imported polypropylene had taken place…"

_____

[4] The correspondence and communications pertaining to the plaintiff's 2005 FOIA request to CBP are attached as Exhibits A, B, C, D, E, F, G and H to the Elkins Declaration.

- Proof that Flexible Foam and Bayer-Lyondell had no records of exchange of the polypropylene glycol.
- Proof of the "number irregularities with [claimant's] drawback entries."
- Copies of the New Orleans laboratory reports described in the petition decision.
- A record of Bayer-Lyondell manager's statement referred to in the petition decision.
- Proof that the "imported product is not 'commercially interchangeable' with any of the four domestic samples."
- Copies of the "clear and convincing evidence [establishing] that the petitioner violated 19 U.S.C. section 1592 by means of fraud…"
- Copies of the calculations which concluded "petitioner's violation caused a potential loss of revenue in the amount of $96,394…"
- Copies of "the evidence [that] supports a finding that the petitioner falsely stated on the CF 7553 the location of export as being Miami in an effort to make it appear that the imported product had been shipped to Miami…"
- Copies of the statements made by the petitioner's former employee to Customs.
- Copies of all memoranda, comments, etc. wherein

3

Customs rejected all of the mitigating factors
presented in the petition.

5.  By a letter dated April 15, 2005, CBP, Area Port
Director, Port of Houston informed plaintiff's counsel that
records responsive to plaintiff's FOIA request were exempt from
FOIA release pursuant to 5 U.S.C. §552 (b)(7)(A) (Elkins Decl. ¶
9; Exhibit B).

6.  By a letter dated April 20, 2005, plaintiff's counsel
faxed a FOIA appeal letter to CBP's Disclosure Law Branch, to the
attention of the former Chief, Disclosure Law Branch, Joanne
Stump, requesting the same information it had requested in its
initial FOIA request (Id., Exhibit C).  It appears plaintiff had
not yet received the April 15, 2005 response letter to its FOIA
request. Id.

7.  By a letter dated April 21, 2005, plaintiff's counsel
faxed an amended FOIA appeal letter to CBP's Disclosure Law
Branch (Id., Exhibit D).

8.  On May 16, 2005, plaintiff's counsel faxed a follow-up
letter to CBP's Disclosure Law Branch (Id., Exhibit E).

9.  On May 24, 2005, an acknowledgment letter of plaintiff's
FOIA appeal was sent to plaintiff's counsel wherein Joanne R.
Stump, the former OR&R Disclosure Law Branch Chief, noted that
CBP would "act with due diligence to process the request as soon
as possible.  However, due to resource constraints, CBP processes
on a first-in, first-out basis" (Id., Exhibit F).

10. On July 25, 2005, plaintiff filed a summons and complaint with this Court (R. 1).

11. On August 17, 2005, Joanne R. Stump issued a decision on plaintiff's appeal (Id., Exhibit G). Ms. Stump informed plaintiff's counsel that several of the items it sought and referred to as "proof" were not records subject to FOIA. Ms. Stump also informed plaintiff that CBP was forwarding portions of its FOIA request to ICE and other offices within CBP. Ms. Stump believed that there might be other responsive records under ICE's jurisdiction, and possibly CBP's Houston Drawback Field Office as well as CBP's Regulatory Audit, South Florida Field Office (Elkins Decl. ¶ 18; Exhibit G).

12. Ms. Stump informed plaintiff that CBP was releasing in full a copy of the Penalty Decision letter (663978) issued by the Chief of the Penalties Branch, OR&R (Id., Exhibit H). CBP also released seven (7) pages of CBP's New Orleans laboratory report with certain portions redacted. The redacted portions of the laboratory report were properly withheld under Exemptions (b)(2), (b)(4), (b)(6), and (b)(7)(C) (Id.; see also Vaughn Index, Attachment A, for the documents released in part.

13. On October 14, 2005, CBP's Regulatory Audit Division, South Florida Field Office, responded to the memoranda sent to them requesting review of Isaac's FOIA appeal (Elkins Declaration ¶ 20). The Regulatory Audit Office informed FAPLB that they had one responsive document to Isaac's request, a Report of Technical

Assistance No. 411-01-AT0-17359 (4 pages total  - 3 report pages
plus 1 distribution sheet).  Regulatory Audit also informed FAPLB
that they had an electronic and hard copy version of this record
but no other records. A thorough search of their records failed
to locate the original audit file (Ferguson Declaration ¶¶ 3-6).
Additionally, Regulatory Audit informed FAPLB that due to a
recent office move (and routine record expungement), records over
5 years old were shredded and it is concluded that the Isaac
Industries audit file was inadvertently shredded in that process
(Ferguson Declaration ¶¶ 6-9).

14.  On October 27, 2005, FAPLB, released in full two pages
and redacted two pages, Report of Technical Assistance No. 411-
01-AT0-17359, to Isaac.  The redacted portions of the report were
withheld based upon Exemptions (b)(6), and (b)(7)(C) (Elkins
Decl. ¶ 20; see also Vaughn Index, Attachment A, for the
documents released in part).

15.  On October 19, 2005, CBP's Houston Drawback Office
responded to the memoranda sent to them requesting review of
Isaac's FOIA appeal.  The Drawback Office informed FAPLB that
after searching their file they had no responsive records beyond
those which previously had been given to CBP' Houston FOIA
coordinator in response to an 2002 FOIA request from Isaac
(Elkins Decl. ¶ 21; Brooks Declaration ¶ 4).

16.  CBP invoked 5 U.S.C. 552(b)(2) to protect matters
related solely to the internal personnel rules and practices of

the agency (Elkins Declaration, ¶¶ 24-26); Exemption (b)(4) to protect from disclosure confidential commercial information voluntarily provided to CBP in the course of the investigation of plaintiff (Elkins Decl. ¶¶ 27-31); Exemption (b)(6) to protect CBP personnel and third parties whose names appear in the Laboratory Report and Report of Technical Assistance (Elkins Decl. ¶¶ 32-33); CBP properly invoked Exemption (b)(7)(c) to protect records or information compiled for law enforcement purposes that "could" reasonably be expected to constitute an unwarranted invasion of privacy (Elkins Decl. ¶¶ 36-38).

17.  Each page of the responsive documents was reviewed by CBP, line by line.  All segregable, non-exempt material was released to plaintiff (Elkins Declaration ¶ 39).

18.  On September 16, 2005, the FOIA Processor for ICE's Special Agent-in-Charge (SAC), Miami, Florida hereinafter (Miami) received a referred copy of the plaintiff's FOIA request dated March 16, 2005 from U.S. Customs and Border Protection (CBP), Office of Rulings and Regulations (ORR) (Fields Declaration ¶ 7). See Exhibit 01.  (ICE has no record of receiving Plaintiff's March 16, 2005, FOIA request directly.)  Upon receipt of the plaintiff's FOIA request Miami placed the request in its queue to be processed in order of receipt.

19.  On October 12, 2005, upon being made aware that the plaintiff's FOIA request was in litigation, the Miami FOIA Processor conducted a search of the Treasury Enforcement

7

Communication System (TECS), and Investigations Records System (IRS), to determine if any responsive records existed in the Miami SAC offices (Fields Declaration ¶ 9).

20.  The Miami FOIA Processor was able to determine that responsive records existed in the Miami SAC office.  The Miami FOIA Processor obtained the name of the case agent from TECS and contacted the case agent in order to obtain the case file for review and processing (Fields Declaration ¶ 10).

21.  Upon review of the case file, the Miami FOIA Processor determined that 26 pages of records were responsive to the plaintiff's request (Fields Declaration ¶ 11).

22.  By letter dated October 21, 2005, ICE's Miami SAC office responded to plaintiff's request with 26 pages of records (Field's Declaration ¶ 12, Exhibit 02).  Five (5) pages of records were released to the plaintiff in full and 21 pages of records were released to the plaintiff with redactions made pursuant to exemption (b)(2), (b)(6) and (b)(7)(C) of the FOIA. Of the 26 pages released, five (5) pages were a Report of Investigation (ROI) dated December 20, 1999, six (6) pages were a ROI dated October 18, 2000, five (5) pages were a ROI dated December 15, 2000, one (1) pages was an Organizational Subject Record, three (3) pages were email messages and six (6) pages were a copy of an import/export spread sheet (Fields Declaration ¶ 12; see also attached Vaughn Index).

23.  On August 21, 2005, ICE's FOIA Processor for the SAC,

8

Houston, hereinafter (Houston) received a referred copy of the plaintiff's FOIA request dated March 16, 2005 from CBP/ORR (Fields Declaration, Exhibit 01).

24.  ICE's Houston FOIA Processor conducted a search of the TECS and IRS to determine if any responsive records existed in the Houston SAC offices.  The Houston FOIA Processor was able to determine that 17 ROIs, comprising 44 pages, existed in the Houston SAC office, IRS, that appeared to be responsive to the plaintiff's request.  The Houston FOIA Processor obtained the name of the case agent from TECS and contacted the case agent in order to obtain the case file for review and processing (Fields Declaration ¶ 15-16).

25.  Upon further review, the Houston FOIA Processor determined that of the initial 44 pages only 27 pages were responsive to the plaintiff's request (Fields Declaration ¶ 17).

26.  By letter dated October 21, 2005, the Houston SAC office responded to plaintiff's request and released 27 pages of records with redactions made pursuant to exemption (b)(2), (b)(7)(C) and (b)(7)(E) of the FOIA (Fields Declaration ¶ 18, Exhibit 03; see also attached Vaughn Index).

27.  By letter dated October 28, 2005, ICE Headquarters released 86 pages of records to the plaintiff (Fields Declaration ¶ 18, Exhibit 04).  Of the 86 pages of records, 66 pages were released with redaction made pursuant to exemptions (b)(2), (b)(6), (b)(7)(C) and (b)(7)(E) of the FOIA.  Twenty (20) pages

9

of records were released in full (Id.).  These records are
maintained in the SAC Miami case file and were initially deemed
to be non-responsive to the plaintiff's request, however after
further review these records were considered responsive and
processed to the plaintiff in a supplemental release (Id.; see
also attached Vaughn Index).

28.  On November 4, 2005, there was a supplement release of
52 pages by ICE (Fields Declaration ¶ 20, Exhibit 05).  Of those
52 pages, 29 pages in whole were released in full.  In the
remaining 23 pages, the "attorney-in-fact" information was
released and the documents were redacted pursuant to Exemptions
(b)(2) and (b)(7)(C) of the FOIA (Fields Declaration ¶ 20).

29.  ICE invoked Exemption (b)(2) to protect internal agency
codes and internal instructions to certain agency employees;
Exemption (b)(4) to protect commercial and financial information
required to be furnished to the government; Exemption (b)(5) to
protect intra-agency predecisional communications; Exemption
(b)(6) to protect the identity of law enforcement personnel;
Exemption (b)(7)(C) to protect the identities of third parties
and agency employees contained in law enforcement records; and
Exemptions (b)(7)(E) to protect law enforcement techniques and
procedures (Fields Declaration ¶¶ 26-33).

30.  ICE reviewed all documents line by line to identify
information exempt from disclosure, or for which a discretionary
waiver could be applied.  ICE determined that all reasonably

10

segregable material has been released to the plaintiff (Fields

Declaration ¶¶ 26-33).

                                         Respectfully submitted,

                                         _____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

                                         _____
R. CRAIG LAWRENCE, D.C. Bar #171538
Assistant United States Attorney

                                         _____
DIANE M. SULLIVAN, D.C. Bar #12765
Assistant United States Attorney
555 4TH St., N.W.,
Civil Division
Washington, D.C.  20530
(202) 514-7205

Of Counsel:
Diane M. Galiano
Office of Associate Chief Counsel
U.S. Customs and Border Protection